Court Of Appeals
Fourth Court of Appeals District of Texas



★   ★   ★                                                         ★   ★   ★

# MEMORANDUM OPINION

No. 04-07-00727-CV

Pete **RAMIREZ**, III,
Appellant

v.

Bishop Gregory **MANSOUR** in His Representative and/or Trustee Capacity for the Eparchy of
Saint Maron and St. George Maronite Church; and Archbishop Jose H. Gomez, in his
Representative and/or Trustee Capacity for the Archdiocese of San Antonio,
Appellees

From the 131st Judicial District Court, Bexar County, Texas
Trial Court No. 2007-CI-15037
Honorable Janet Littlejohn, Judge Presiding

Opinion by:     Phylis J. Speedlin, Justice

Sitting:        Karen Angelini, Justice
                Sandee Bryan Marion, Justice
                Phylis J. Speedlin, Justice

Delivered and Filed:  July 8, 2009

AFFIRMED

Pete Ramirez, III appeals the trial court's order granting summary judgment in favor of

Bishop Gregory Mansour in his representative and/or trustee capacity for the Eparchy of Saint Maron

of Brooklyn and St. George Maronite Church and Archbishop Jose H. Gomez in his representative

and/or trustee capacity for the Archdiocese of San Antonio (collectively, "the Church").  For the

reasons set forth below, we affirm the judgment of the trial court.

## FACTUAL & PROCEDURAL BACKGROUND

In the lawsuit currently before us, Ramirez sued the Church and Monsignor James T. Khoury for intentional and negligent infliction of emotional distress, breach of fiduciary duties, breach of oral contract, fraudulent inducement into oral contract, negligence, and defamation arising from his participation in a 2004 defrockment proceeding. The Church moved for summary judgment on grounds of res judicata and/or collateral estoppel, arguing that these claims could have, and should have, been brought in a prior suit filed by Ramirez and disposed of by summary judgment. To understand the issues before us, we must first set forth the background facts, which span over two decades.

According to the summary judgment evidence, in 1982, Ramirez, then a high school student, was sexually abused by Khoury, a Maronite priest of St. George Maronite Church. In 1985, Ramirez, his father, mother, and sister entered into a settlement agreement and executed a release of claims against Khoury, St. George Maronite Church, and the Eparchy of St. Maron in Brooklyn, New York. In the spring of 2004, Ramirez, by and through his attorney, Robert Scamardo, provided written notice to Bishop Mansour and the Eparchy of his allegations regarding the 1982 sexual abuse by Khoury and offered to negotiate a settlement of any and all claims arising from his sexual assault in exchange for, among other things, permanent removal of Khoury from the ministry, psychotherapy for Ramirez and his family as long as therapy was deemed helpful to Ramirez's healing, and monetary damages for the alleged assaults, mental anguish, and pain and suffering.

In July 2004, Dr. Anthony Shaia, Chairman of the Eparchy Review Board ("the Board"), invited Ramirez to appear and give testimony before the Board in Washington, D.C. regarding his allegations against Khoury. Attorney Scamardo emailed Shaia outlining Ramirez's conditions for

appearance; he subsequently confirmed that Ramirez would appear and demanded $25 million for damages. On August 5, 2004, Ramirez appeared before the Board along with his attorneys.

In November 2004, Ramirez retained attorney Robert Rush, who advised the Eparchy that any and all previously discussed offers associated with Ramirez's demands were withdrawn. On May 16, 2005[1], Ramirez filed his first lawsuit against Bishop Mansour in his representative and/or trustee capacity for the Eparchy of Saint Maron and St. George Maronite Church, Archbishop Jose H. Gomez in his representative and/or trustee capacity for the Archdiocese of San Antonio, and Monsignor James Khoury to recover for the sexual assaults perpetrated against him by Khoury in 1982 (hereinafter referred to as the "2005 lawsuit"). Ramirez claimed that the statute of limitations was tolled on his claims because he was operating under a legal disability, *i.e.*, unsound mind. The Church responded with a general denial and the affirmative defenses of release based upon the 1985 settlement agreement and the statute of limitations. The Church also counterclaimed for breach of the confidentiality agreement contained in the 1985 settlement agreement. Subsequently, the Church filed a traditional motion for summary judgment on the grounds that Ramirez's claims were barred by limitations and release. On May 10, 2006, the trial court[2] granted the Church's summary judgment on all of Ramirez's claims and causes of action and severed the summary judgment into a new cause number, 2006-CI-10600. The Church's counterclaims related to the 1985 settlement agreement remained pending. This court affirmed the summary judgment in an opinion dated

---

[1] Ramirez later filed his First Amended Petition on April 12, 2006, the live pleading upon which summary judgment was granted.

[2] The Honorable Michael Peden, presiding judge of the 285th Judicial District Court, Bexar County, Texas, granted the summary judgment.

August 1, 2007. *See Ramirez v. Mansour*, No. 04-06-00536-CV, 2007 WL 2187103 (Tex.

App.—San Antonio Aug. 1, 2007, no pet.) (mem. op.).

In August 2006, Ramirez, as counter-defendant, filed a counterclaim against the Church in

the remaining lawsuit, claiming he was "victimized a second time" in 2004 when he testified before

the Board.[3] Specifically, his "Second Amended Counterclaim Against Defendants" reads in part:

> In 2004, Pete Ramirez was victimized a second time. Well-aware of the devastating impact that the [1982] abuse had on Pete, the Archdiocese and the Eparchy contacted Pete and asked him to testify against Khoury in a church proceeding investigating Khoury without any consideration of the severe effects providing testimony could have on Pete. In return, the Archdiocese and the Eparchy promised to take care of Pete, and to, among other things, get him whatever help he and his family needed to heal from the new effects testifying could have on his life. Pete honored his end of the agreement.
>
> Instead of keeping their promise, the Archdiocese and the Eparchy once again cast Pete aside when they were finished with him, forcing him to deal with the effects of his testimony and the hearing on his own.

Ramirez asserted the following causes of action stemming from the 2004 "second victimization": (1)

intentional infliction of emotional distress; (2) negligent infliction of emotional distress; (3)

negligence; (4) breach of fiduciary duty; (5) breach of oral contract; (6) fraudulent inducement into

oral contract; (7) defamation; and (8) a declaratory judgment that the 1985 settlement agreement was

unenforceable and/or void.

The Church again sought summary judgment based on the affirmative defenses of res judicata

and collateral estoppel. The Church further asserted as a basis for summary judgment that the

Declaratory Judgment Act is not available for disputes already pending before the trial court. Ramirez

filed a response to the motion for summary judgment in which he maintained res judicata did not bar

---

[3] In briefing before this court, the Church refers to Ramirez's August 2006 counterclaim as the "second lawsuit." We adopt that reference for ease of understanding.

his counterclaim because it did not arise from the sexual assault claim that was previously disposed of by summary judgment. The trial court granted summary judgment in favor of the Church, and severed the summary judgment into a new cause number, 2007-CI-15037. Ramirez timely filed this appeal.

**DISCUSSION**

***Does Res Judicata Bar Ramirez's Second Suit?***

### 1. *Standard of Review – Summary Judgment*

The party moving for traditional summary judgment carries the burden of establishing that no genuine material fact issue exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Rhone-Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 223 (Tex. 1999); *Jones v. Nightingale*, 900 S.W.2d 87, 88 (Tex. App.—San Antonio 1995, writ ref'd). When moving for summary judgment on an affirmative defense, the defendant must conclusively establish each essential element of that defense. *Rhone-Poulenc*, 997 S.W.2d at 223. Once a defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the nonmovant to produce controverting evidence raising a fact issue. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995); *Romo v. Tex. Dep't. of Transp.,* 48 S.W.3d 265, 269 (Tex. App.—San Antonio 2001, no pet.).

We review motions for summary judgment *de novo. Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005); *Romo,* 48 S.W.3d at 269. In deciding whether there is a disputed issue of material fact precluding summary judgment, "we take as true all competent evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *Diversicare Gen. Partner, Inc. v. Rubio,* 185 S.W.3d 842, 846 (Tex. 2005). When, as here, the trial court does not state the basis for its decision in its summary judgment order, we must uphold

the order if any of the theories advanced are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

### 2. Res Judicata

Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Trust Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628-29 (Tex. 1992). "The doctrine is intended to prevent causes of action from being split, thus curbing vexatious litigation and promoting judicial economy." *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 207 (Tex. 1999) (citing *Barr*, 837 S.W.2d at 629). The elements of res judicata are: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims that were raised or could have been raised in the first action. *Igal v. Brightstar Info. Tech. Group, Inc.,* 250 S.W.3d 78, 86 (Tex. 2008); *Amstadt v. U. S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex. 1996).

"The scope of res judicata is not limited to matters actually litigated; the judgment in the first suit precludes a second action by the parties and their privies not only on matters actually litigated, but also on *causes of action* or defenses which arise out of the same *subject matter* and which might have been litigated in the first suit." *Barr*, 837 S.W.2d at 630 (quoting *Tex. Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771-72 (Tex. 1979) (emphasis added)). To determine what constitutes the subject matter of a suit, we analyze the factual matters that make up the gist of the complaint, without regard to the form of action; any cause of action which arises out of those same facts should, if practicable, be litigated in the same lawsuit. *Barr*, 837 S.W.2d at 630; *Crow Iron Works,* 582 S.W.2d at 772.

### 3.  *Analysis*

Here, the first two elements of the affirmative defense of res judicata are not challenged. Therefore, we focus our analysis on whether Ramirez's counterclaim is based on the same claims that were raised or could have been raised in his 2005 lawsuit previously disposed of by summary judgment. *See Barr,* 837 S.W.2d at 630-31; *Igal,* 250 S.W.3d at 86. Initially, we note that there is no dispute that the claims related to the 2004 defrockment proceeding accrued and were fully mature at the time Ramirez filed his 2005 lawsuit and, therefore, it is agreed that the 2004 claims could have been raised in the 2005 lawsuit. *See Ingersoll-Rand,* 997 S.W.2d at 207 (noting that a claim is mature when it has accrued). Ramirez argues only that he was not required to bring the claims at the same time. Ramirez refers to his counterclaim as permissive, conceding that although he *could* have asserted the claims in the 2005 lawsuit, he was not *required* to do so.

The Church responds that despite Ramirez's attempt to distinguish the two lawsuits by the twenty-year gap between the "first victimization" and the "second victimization," all of the factual allegations and causes of action in the second lawsuit are predicated on Ramirez's original claim of sexual abuse by Khoury. In fact, the "second victimization" occurred while he was attempting to negotiate with the Church a resolution of his "first victimization" claim. Additionally, all of the allegations concerning the 2004 defrockment proceeding and the causes of action associated therewith occurred prior to filing the 2005 lawsuit, and certainly prior to the hearing on the first motion for summary judgment. Accordingly, the Church maintains that Ramirez was required to bring all causes of action in the 2005 lawsuit.

We agree that, pursuant to *Barr*, the claims in Ramirez's second lawsuit arise from the same subject matter as the claims asserted in the 2005 lawsuit. *See Barr*, 837 S.W.2d at 630. Based on his

pleadings related to the "second victimization," Ramirez maintains that the Church, aware of his "fragile mental state" and the devastating effects that recalling the sexual abuse would have on him, again abused him when they asked him to testify at the 2004 defrockment proceeding. The reason for his fragile mental state was due to the 1982 abuse. His pleadings also reference a "fiduciary or special relationship" that existed between Ramirez and the Church, also apparently stemming from the 1982 abuse. Accordingly, we conclude the facts of both lawsuits are related in "time, space, origin, and motivation" and "taken together, they form a convenient trial unit." *See Barr*, 837 S.W.2d at 631 (quoting RESTATEMENT OF JUDGMENTS § 24(2)). If the claims arise out of the same subject matter and can be brought together, they cannot be asserted separately. *Hallco Tex., Inc. v. McMullen County,* 221 S.W.3d 50, 59 (Tex. 2006). Further, Ramirez's claims related to the 2004 defrockment proceeding were mature at the time he filed the 2005 lawsuit, and certainly at the time the summary judgment motion was heard.

Moreover, there is no valid reason to subject the Church to two different lawsuits. *See Barr*, 837 S.W.2d at 629 (noting that the policies behind res judicata "reflect the need to bring all litigation to an end, prevent vexatious litigation, maintain stability of court decisions, promote judicial economy, and prevent double recovery"). The only factual allegations in the second lawsuit not intertwined with the abuse that occurred in 1982 is Ramirez's claim that an oral contract was formed related to the defrockment proceeding and the Church's agreement to take care of him and his family after testifying. However, the defrockment proceeding arose from and was closely related to the 1982 abuse and attempted settlement of that abuse. Because he could have, with due diligence, brought the "second victimization" claims in the 2005 lawsuit, res judicata bars Ramirez from "two bites at the apple." *Barr*, 837 S.W.2d at 631.

*Is Ramirez's Request for Declaratory Judgment Barred?*

Ramirez's Second Amended Counterclaim sought "a declaration that the [1985] release agreement, including the release and nondisclosure provisions which serve as the basis of the Church Defendants' counterclaims, is unenforceable and/or void." Ramirez also sought attorneys' fees and costs pursuant to the Declaratory Judgments Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 2008). The Church's motion for summary judgment asserted that (1) collateral estoppel bars Ramirez from asserting that the 1985 settlement agreement is unenforceable and/or void, and (2) the Declaratory Judgment Act cannot be invoked to determine rights in a pending suit.

Collateral estoppel, also known as issue preclusion, is more narrow than res judicata. *Avila v. St. Luke's Lutheran Hosp.*, 948 S.W.2d 841, 847-48 (Tex. App.—San Antonio 1997, writ denied). Collateral estoppel bars only the relitigation of identical issues of fact or law that were actually litigated and essential to the judgment in a prior suit. *Id.* More specifically, the doctrine extends only to those issues that were either expressly determined or necessarily determined in an adjudication and not to those matters which might have been, but were not, raised and adjudicated therein. *See Barr,* 837 S.W.2d at 628. Once an actually litigated and essential issue is determined, that issue is conclusive in a subsequent action between the same parties. *Van Dyke v. Boswell, O'Toole, Davis & Pickering,* 697 S.W.2d 381, 384 (Tex. 1985). The following elements are necessary to establish collateral estoppel: (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. *Avila*, 948 S.W.2d at 848.

Ramirez contends that his claims are not precluded by collateral estoppel because the precise issues in the second lawsuit—whether the release and confidentiality provisions are void and/or

unenforceable—were not adjudicated in the 2005 lawsuit. The Church responds that those issues were, in fact, previously adjudicated when the trial court granted summary judgment on its affirmative defenses of settlement and release. Although Ramirez does not state on what basis he now claims the settlement agreement is void, the Church points to Ramirez's response to requests for disclosure, where he answered that the settlement agreement is "unenforceable due to duress and because plaintiff lacked the capacity to contract at the time the agreement was signed. . . [t]he agreement was also procured by fraud, violates public policy and is illegal."

We agree that these issues were decided in the 2005 lawsuit, where Ramirez similarly asserted that he was of unsound mind at the time the settlement agreement was signed. The Church then sought summary judgment on the grounds that Ramirez's claims were barred as a result of a preexisting settlement agreement and argued that the release was valid on its face; the trial court granted summary judgment and this court affirmed the judgment. *See Ramirez v. Mansour*, 2007 WL 2187103, at *3, *6 (holding that exclusion of expert testimony that Ramirez was incapacitated when he signed the 1985 settlement agreement left Ramirez with no evidence of unsound mind, and therefore, the Church established its right to judgment as a matter of law on the issue of release). Furthermore, declaratory relief would have been inappropriate in this case, where Ramirez sought resolution of a dispute already pending before the court. *See BHP Petroleum Co., Inc. v. Millard*, 800 S.W.2d 838, 841 (Tex. 1990) (holding that the Declaratory Judgments Act is "not available to settle disputes already pending before a court").

## CONCLUSION

We conclude the Church met its burden of conclusively establishing the elements of its affirmative defenses of res judicata and/or collateral estoppel, and established its right to judgment

as a matter of law.  Accordingly, we affirm the trial court's order granting summary judgment in favor of the Church.

Phylis J. Speedlin, Justice